UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHRISTOPHER S. SHANK** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-4530** |
| **N. BURL CAIN, WARDEN** | **SECTION "B"(4)** |

**REPORT AND RECOMMENDATION**

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

**I.      Factual Background**

The petitioner, Christopher S. Shank ("Shank"), is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] On October 9, 2003, Shank was indicted by a Jefferson Parish Grand Jury on one count of aggravate rape of a juvenile.[3] He entered a plea of not guilty to the charge on October 20, 2003.[4]

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 1. The Clerk inexplicably docketed a duplicate copy of Shank's petition as Rec. Doc. No. 7 when the filing fee was received. The initiating document in this case will be referenced as Rec. Doc. No. 1.

[3] St. Rec. Vol. 1 of 9, Indictment, 10/9/03; Amended Grand Jury Return, 10/16/03; Grand Jury Return, 10/9/03.

[4] St. Rec. Vol. 1 of 9, Minute Entry, 10/20/03. Shank changed his plea to not guilty, not guilty by reason of insanity, and later abandoned that defense. St. Rec. Vol. 1 of 9, Hearing Transcript, 6/30/04; Minute Entry 2, 6/30/04.

The record reflects that, on or before August 9, 2003, Shank was living with the D family.[5] During the early morning hours, Shank knocked on the door of the home, and Mr. D. got up to let Shank into the house and then went back to bed. About an hour later, Mr. D. was awakened by his youngest daughter who reported that his godson had wet the bed. Mr. D. took care of the matter and noticed that D.D., his five-year-old daughter, was not in her room. His youngest daughter told him she was in Shank's room.

Mr. D. looked into Shank's room through a partially cracked door and saw what looked like Shank having sex with someone. Mr. D. stated that Shank was under the covers, "on top and just humping." Because he was half asleep, Mr. D. thought nothing of it and went to look for D.D. in his bedroom, thinking she might have crawled into bed with Mrs. D, but she was not there. Mr. D. returned to Shank's room and saw Shank lying on his side holding D.D. next to him. Mr. D. told D.D. to go back to her bed, but she stated she could not because Shank had taken off her panties. Mr. D took D.D. to his wife, and D.D. told her mother that Shank had pulled her panties off and touched her. According to Mrs. D, D.D. stated "she was rocking on [defendant] . . . like grown-ups do." Mrs. D looked at D.D.'s vagina and saw blood. Meanwhile, Mr. D. grabbed his gun, put it to Shank's head, and ordered him to leave. After a brief scuffle, Shank left.

The police seized D.D.'s nightgown and the bedding, which later tested negative for seminal fluids. D.D.'s panties were never found. D.D. was taken to Children's Hospital, and the rape exam

---

[5]The facts were taken from the published opinion of the Louisiana Fifth Circuit Court of Appeal on direct appeal. *State v. Shank*, 924 So.2d 316, 319-20 (La. App. 5th Cir. 2006); St. Rec. Vol. 4 of 9, 5th Cir. Opinion, 05-KA-421, pp. 3-4, 2/14/06. Under Louisiana law, the victim and her family are identified by initials to protect the victim's identity. See, La. Rev. Stat. Ann. § 46:1844(W)(3). The Court will continue to do so in this Report.

performed by Dr. Adrienne Atzemis revealed a small laceration of the posterior forchette, which was consistent with penile/vaginal contact.

Shank was tried before a jury on October 27 and 28, 2004, and was found guilty as charged.[6] The Trial Court sentenced Shank on December 8, 2004, to life in prison without benefit of parole, probation, or suspension of sentence.[7]

On direct appeal to the Louisiana Fifth Circuit Court of Appeal, Shank's appointed counsel asserted the following errors:[8] (1) the Trial Court erred in admitting Shank's statements at trial; and (2) the evidence was insufficient to support the verdict. Shank submitted a supplemental memorandum asserting additional arguments to support the claims raised by counsel.[9]

The Louisiana Fifth Circuit affirmed the conviction on February 14, 2006, finding no merit in the second claim and finding the first claim in part to have no merit and in part to be procedurally barred.[10] The Court, however, remanded the matter for the Trial Court to advise Shank of the prescriptive period for seeking post-conviction relief and the requirements for registering as a sex offender. The Trial Court complied with this directive on March 2, 2006.[11]

---

[6]St. Rec. Vol. 1 of 9, Trial Minutes, 10/27/04; Trial Minutes, 10/28/04; Jury Verdict, 10/28/04; St. Rec. Vol. 2 of 9, Trial Transcript, 10/28/04; St. Rec. Vol. 3 of 9, Trial Transcript (continued), 10/28/04.

[7]St. Rec. Vol. 1 of 9, Sentencing Minutes, 12/8/04; St. Rec. Vol. 3 of 9, Sentencing Transcript, 12/8/04.

[8]St. Rec. Vol. 3 of 9, Appeal Brief, 05-KA-0421, 5/11/05.

[9]St. Rec. Vol. 3 of 9, Pro Se Supplemental Brief, 05-KA-0421, 9/29/05.

[10]*Shank*, 924 So.2d at 316; St. Rec. Vol. 4 of 9, 5th Cir. Opinion, 05-KA-421, 2/14/06.

[11]St. Rec. Vol. 4 of 9, Notice of Prescriptive Period, 3/2/06; Notice of Registration Requirements, 3/2/06; Minute Entry, 3/15/06.

On November 17, 2006, the Louisiana Supreme Court denied Shank's related writ application without stated reasons.[12] His conviction became final under federal law ninety (90) days later, on February 15, 2007, because he did not file a writ application with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1).

Two years later, on February 11, 2009, Shank submitted to the state trial court an application for post-conviction relief in which he asserted eleven grounds for relief:[13] (1) the State withheld favorable evidence in the original photographs from the victim's initial examination; (2) the State's disclosure failed to volunteer exculpatory evidence; (3) the State withheld critical, physical evidence at trial; (4) the State elicited false testimony from Mrs. D.; (5) the State admitted a false confession through Russell Buras; (6) the State allowed other false testimony to go uncorrected; (7) he was denied the right to cross-examine and confront Officer Scott Guillory; (8) the State knowingly violated *Brady*; (9) the Trial Court exceeded its jurisdiction on a defective indictment; (10) the trial transcripts were altered for appeal; and (11) he was denied effective assistance of counsel.

The Trial Court denied the application on March 2, 2009, as untimely filed under La. Code Crim. P. art. 930.8.[14] The Louisiana Fifth Circuit denied Shank's related writ application on May

---

[12]*State v. Shank*, 942 So.2d 531 (La. 2006); St. Rec. Vol. 9 of 9, La. S. Ct. Order, 2006-KO-1176, 11/17/06; La. S. Ct. Writ Application, 06-KO-1176, 5/19/06 (dated 3/6/06); St. Rec. Vol. 4 of 9, La. S. Ct. Letter, 2006-KO-1176, 5/19/06.

[13]St. Rec. Vol. 5 of 9, Application for Post-Conviction Relief, 2/17/09 (dated 2/11/09).

[14]St. Rec. Vol. 5 of 9, Trial Court Order, 3/2/09.

4

27, 2009, finding no error in that ruling.[15]  The Louisiana Supreme Court also denied Shank's untimely[16] writ application without stated reasons on June 18, 2010.[17]

Over three years later, on July 12, 2013, Shank signed and submitted to the state trial court a second application for post-conviction relief asserting the following grounds for relief:[18] (1) the State knowingly presented false, material testimony without correction; and (2) he was denied effective assistance of counsel.  After receiving a response from the State, the Trial Court denied the application on October 18, 2013, as untimely filed and found no exception to the bar under La. Code Crim. P. art. 930.8.[19]

The Louisiana Fifth Circuit denied Shank's untimely filed writ application on March 11, 2014, finding no error in the Trial Court's ruling.[20]  The Louisiana Supreme Court also denied Shank's related writ application without stated reasons on December 8, 2014.[21]

---

[15]St. Rec. Vol. 8 of 9, 5th Cir. Order, 09-KH-338, 5/27/09; 5th Cir. Writ Application, 09-KH-338, 5/5/09 (dated 4/28/09).  Shank had until April 29, 2009, to seek timely review.  St. Rec. Vol. 5 of 9, Trial Court Order, 3/24/09.

[16]Pursuant to La. S. Ct. R. X§5, petitioner had 30 days from the issuance of the state appellate court's decision to mail or file a timely writ application in the Louisiana Supreme Court, which he did not do.

[17]*State ex rel. Shank v. State*, 38 So.3d 316 (La. 2010); St. Rec. Vol. 9 of 9, La. S. Ct. Order, 2009-KH-1863, 6/18/10; La. S. Ct. Writ Application, 09-KH-1863, 8/14/09 (dated 7/14/09); St. Rec. Vol. 5 of 9, La. S. Ct. Letter, 2009-KH-1863, 8/14/09.

[18]St. Rec. Vol. 5 of 9, Application for Post-Conviction Relief, 7/17/13 (dated 7/12/13).

[19]St. Rec. Vol. 6 of 9, Trial Court Order, 10/18/13; St. Rec. Vol. 5 of 9, State's Response, 9/5/13; Trial Court Order, 8/6/13; *see also*, St. Rec. Vol. 6 of 9, Trial Court Order, 11/7/13 (denying Shank's motion to file a traverse).

[20]St. Rec. Vol. 8 of 9, 5th Cir. Order, 14-KH-33, 3/11/14; 5th Cir. Writ Application, 14-KH-33, 1/13/14 (dated 1/6/14).  Shank had until December 30, 2013, to file a writ application.  St. Rec. Vol. 6 of 9, Trial Court Order, 11/26/13.

[21]*State ex rel. Shank v. State*, 153 So.3d 434 (La. 2014); St. Rec. Vol. 9 of 9, La. S. Ct. Order, 2014-KH-0721, 12/8/14; La. S. Ct. Writ Application, 14-KH-721, 4/7/14 (dated 4/2/14); St. Rec. Vol. 6 of 9, La. S. Ct. Letter, 2014-KH-721, 4/7/14.

## II.     Federal Habeas Petition

On September 17, 2015, the clerk of this Court filed Shank's petition for federal habeas corpus relief in which he asserts the following grounds for relief:[22] (1) the prosecution failed to disclose favorable evidence to the defendant; and (2) he was denied effective assistance of counsel. Shank also seeks an evidentiary hearing, which the Court has already found to be unnecessary,[23] and asks this Court to consider excusing his untimely filing under the holding in *Martinez v. Ryan*, __ U.S. __, 132 S. Ct. 1309 (2012) and the actual innocence exception.

The State filed a response in opposition to the petition arguing that it was not timely filed under federal law, and Shank does not meet an exception to excuse his untimely filing.[24]

## III.    General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[25] applies to this petition, which is deemed filed in this Court by Shank under the federal mailbox rule on September 17, 2015.[26] The threshold questions on habeas review under

---

[22] Rec. Doc. No. 1.  As noted previously, Rec. Doc. No. 7 is a duplicate of Rec. Doc. No. 1.

[23] *See* fn. 1, *supra*.

[24] Rec. Doc. No. 18.

[25] The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[26] The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Shank's federal habeas petition on September 17, 2015, when it was electronically received from Shank. According to the official stamp of the prison, Shank delivered his pleadings to prison officials on September 17, 2015, (the date he signed them) for electronic mailing to this Court, which was done that same day. Rec. Doc. No. 1-2, p. 106; Rec. Doc. No. 7-2, p. 106. The fact

6

the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and the claims must not be in "procedural default." *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

As indicated above, the State contends that Shank's petition was not timely filed under federal law. For the reasons that follow, Shank's petition should be dismissed as untimely filed.

## IV.     Statute of Limitations

The AEDPA requires a petitioner to bring his § 2254 claim within one year of the date his conviction became final.[27] *Duncan v. Walker*, 533 U.S. 167, 176-80 (2001). As calculated above, Shank's conviction was final under federal law on February 15, 2007, he did not seek review in the United States Supreme Court. Pursuant to § 2244, Shank had one year from that date, or until February 15, 2008, to timely file a federal application for habeas corpus relief which he did not do.

---

that he later paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. *See Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002) (mailbox rule applies even if the filing fee is not paid at time of mailing) (citing *Spotville*, 149 F.3d at 376).

[27] The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
A.   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
B.   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
C.   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
D.   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. 28 U.S.C. § 2244(d).

Thus, literal application of the statute would bar Shank's petition as of that date unless he is entitled to tolling as provided for under the AEDPA.

### A. <u>Statutory Tolling</u>

Section 2244(d)(2) provides that the time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation. *See* 28 U.S.C. § 2244(d)(2). In order for a state post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing. *Pace v. DiGuglielmo*, 544 U.S. 408, 413-14 (2005); *Williams v. Cain*, 217 F.3d 303, 306-08 & n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 468-69 (5th Cir. 1999), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999) (Table). For purposes of the AEDPA, a timeliness calculation in Louisiana requires the application of the prison mailbox rule to state pleadings. *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006). The Court has applied this rule in presenting the procedural history recited above.

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams*, 217 F.3d at 310 (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999)) (finding that a matter is "pending" for Section 2244(d)(2) purposes until further appellate review is unavailable under Louisiana's procedures.'"); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition.

*Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (finding that a state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, 264 F.3d 310, 316 (3d Cir. 2001), *overruled on other grounds by Carey*, 536 U.S. 214 (finding that a motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. *Godfrey v. Dretke*, 396 F.3d 681, 687-88 (5th Cir. 2005).

However, requests for document and transcript copies like those pursued by the petitioner in the state courts are not "other collateral review" for purposes of the tolling calculation. *Osborne v. Boone*, 176 F.3d 489, 1999 WL 203523, at *1 (10th Cir. Apr. 12, 1999) (Table, Text in Westlaw) (motion for transcript copies is not "other collateral review" for tolling purposes); *Brown v. Cain*, 112 F. Supp. 2d 585, 587 (E.D. La. 2000), *aff'd*, 239 F.3d 365 (5th Cir. 2000); *Gerrets v. Futrell*, No. 01-3080, 2002 WL 63541, at *1 (E.D. La. Jan. 16, 2002) (Vance, J.); *Jones v. Johnson*, No. 01-CV-0115-G, 2001 WL 1006062, at *3 (N.D. Tex. Aug. 13, 2001) (petitioner should file application and then continue to gather transcripts); *Grayson v. Grayson*, 185 F. Supp.2d 747, 751-52 (E.D. Mich. Jan. 3, 2002) (delay in receipt of transcript not required to file the application, does not warrant equitable tolling).

In the instant case, the AEDPA one-year filing period began to run on February 16, 2007, the day after Shank's conviction was final. The filing period continued to run uninterrupted for one

year, until February 15, 2008, when it expired. Shank had no properly filed state application for post-conviction or other collateral review pending during that time. As mentioned above, his efforts to obtain copies of the record and other documents did not constitute "state post-conviction or other collateral review" for purposes of tolling.

Furthermore, Shank did not file for post-conviction relief in the state courts until one year after the AEDPA filing period expired, when he submitted his first post-conviction application to the state trial court on February 11, 2009. As outlined previously, this application was denied by the state courts as untimely under La. Code Crim. P. art. 930.8, concluding with the Louisiana Supreme Court's ruling on June 18, 2010. *See Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

Following that proceeding, Shank allowed another three years to expire before making a second attempt at post-conviction relief in the state courts on July 12, 2013, which also was untimely and unsuccessful. When that round of state court review was completed on December 8, 2014, Shank waited another nine months to present his federal petition for filing on September 17, 2015. In all, Shank has allowed 1,762 days to run since the finality of his conviction on February 15, 2007, without pursuing state post-conviction or other collateral review or federal habeas corpus relief. His state post-conviction applications filed in 2009 and 2013 were made well-after the expiration of the AEDPA one-year filing period on February 15, 2008, and did not renew the filing period or provide him any tolling benefits. *See Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000).

For these reasons, Shank's federal petition deemed filed on September 17, 2015, was not timely filed in this Court under the AEDPA.

**B.     No Equitable Tolling**

The post-AEDPA jurisprudence also provides for equitable tolling where rare or extraordinary circumstances may have prevented a diligent petitioner from timely pursuing federal habeas corpus.  *Pace*, 544 U.S. at 418; *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810-11 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999).  Equitable tolling is warranted <u>only</u> in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights.  *Pace*, 544 U.S. at 418-19; *see Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002).

Equitable tolling has only been extended under extraordinary circumstances outside the control of the petitioner.  *See Holland v. Florida*, 560 U.S. 631, 652-53 (2010) (finding that equitable tolling was warranted where attorney was more than negligent when he failed to satisfy professional standards of care by ignoring the client's requests to timely file a federal petition and in failing to communicate with the client over a period of years in spite of the client's letters); *Hardy v. Quarterman*, 577 F.3d 596, 599-600 (5th Cir. 2009) (finding that equitable tolling was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court.); *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002) (finding that tolling was warranted when

defendant was deceived by attorney into believing that a timely motion to vacate was filed); *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999) ("A garden variety claim of excusable neglect does not support equitable tolling.") (quotation omitted); *Fisher*, 174 F.3d at 715 (finding that tolling is not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); *Cantu-Tzin*, 162 F.3d at 300 (finding that State's alleged failure to appoint competent habeas counsel did not justify tolling); *Davis*, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended the deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

Shank has not presented, and the record does not demonstrate, any basis for extending the extraordinary remedy of equitable tolling to the § 2244(d) calculation. The record does not contain any of the extraordinary circumstances previously recognized by the precedent cited above that would warrant equitable tolling. The record instead reflects simply that the petitioner did not timely pursue his state post-conviction relief or federal habeas review. There is no basis for equitable tolling in this case.

    **C.**    ***Martinez* is Not Applicable Here**

Under a broad reading, Shank contends that this Court should excuse the procedural bar to his untimely filed state post-conviction applications and consider the merits of his claims. However, the United States Supreme Court's holdings in *Martinez*, 132 S. Ct. at 1309 and *Trevino v. Thaler*, __ U.S. __, 133 S. Ct. 1911 (2013), do not provide a basis for review of this <u>untimely</u> filed <u>federal</u> petition or his ineffective assistance of counsel claim.

In *Martinez*, the Court held that a <u>state imposed</u> "'<u>procedural default</u> will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [State's] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.'" *Trevino*, 133 S. Ct. at 1912 (quoting *Martinez*, 132 S. Ct. at 1320) (emphasis added). The bar to review at issue in this case arises from Shank's failure to meet the <u>federal</u> limitations deadline under the AEDPA. The *Martinez* and *Trevino* decisions do <u>not</u> address or provide an excuse for the untimely filing of a federal habeas petition. *See*, *Arthur v. Thomas*, 739 F.3d 611, 631 (11th Cir. 2014) ("Thus, we also hold that the reasoning of the *Martinez* rule does not apply to AEDPA's limitations period in § 2254 cases or any potential tolling of that period."); *Smith v. Rogers*, No. 14-0482, 2014 WL 2972884, at * 1 (W.D. La. Jul. 2, 2014); *Falls v. Cain*, No. 13-5091, 2014 WL 2702380, at *3 (E.D. La. Jun.13, 2014) (Order adopting Report).

These cases also do not constitute new rules of constitutional law made retroactive on collateral review that would start a new one-year filing period under the AEDPA. *See*, *In re Paredes*, No. 14-51160, 2014 WL 5420533, at *6 (5th Cir. Oct. 25, 2014) ("... the Supreme Court has not made either *Martinez* or *Trevino* retroactive to cases on collateral review, within the meaning of 28 U.S.C. § 2244."); *Adams v. Thaler*, 679 F.3d 312, 322 n.6 (5th Cir. 2012). For these reasons, neither *Martinez* nor *Trevino* provide petitioner a basis for relief from the failure to meet the AEDPA's limitations period.

### D.     **Actual Innocence Exception**

Shank also contends, under a broad reading, that this Court should consider the actual innocence exception to the state imposed procedural bar to review of his federal habeas claims.

Shank has failed to make even a threshold showing of his actual innocence to excuse his untimely filing under the AEDPA.

In *McQuiggin v. Perkins*, __ U.S. __, 133 S. Ct. 1924 (2013), the United States Supreme Court held "that actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or, as in this case, expiration of the statute of limitations." *Id*., at 1928. In recognizing the stringent standards of this exception to § 2244(d), the Supreme Court held that "[t]o invoke the miscarriage of justice exception to AEDPA's statute of limitations, we repeat, a petitioner 'must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Id*., at 1935 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). He must do so through the presentation of "new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." *Schlup*, 513 U.S. at 324; *see Stroman v. Thaler*, 405 F. App'x 933, 934-35 (5th Cir. 2010).

In this case, Shank has not pointed to any new (or reliable) evidence of his factual innocence, much less any evidence that would undermine the verdict in his case or that would lead a court to conclude that a reasonable factfinder would question his guilt. *Accord*, *Golmon v. Director, TDJC-CID*, No. 13CV325, 2013 WL 3724838, at *1 (E.D. Tex. Jul. 15, 2013). As addressed by the state courts on post-conviction review, all of the "new" documents located by Shank were provided to his counsel and/or presented at trial, in spite of Shank's claim that <u>he</u> personally did not have it.[28]

---

[28]*See e.g.*, St. Rec. Vol. 8 of 9, 5th Cir. Order, 14-KH-22, 3/11/14; St. Rec. Vol. 6 of 9, Trial Court Order, 10/18/13.

In addition, Shank has not pointed to any evidence of his actual innocence *per se*. Instead, he argues only procedural errors at trial in the presentation of the State's case. This is not sufficient to meet the high standards of an actual innocence exception under *McQuiggin* or *Schlup*. The record before the Court falls far short of meeting the threshold level of proof required to invoke an actual innocence or miscarriage of justice exception to the AEDPA's statute of limitation. *See Golmon*, 2013 WL 3724838 at *1 (petitioner's failure to present any evidence of innocence was insufficient to invoke exception); *Sullivan v. Walker*, No. 12-CV-833, 2013 WL 2465366, at *3 (N. D. Tex. Jun. 14, 2013).

For all of the foregoing reasons, Shank's federal petition deemed filed on September 17, 2015, which was over seven (7) years and seven (7) months after the one-year AEDPA filing period expired on February 15, 2008, is untimely filed and should be dismissed for that reason.

**V.     Recommendation**

For the foregoing reasons, it is **RECOMMENDED** that Christopher S. Shank's petition for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district

court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[29]

New Orleans, Louisiana, this 4th day of March, 2016.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[29] *Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.